IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| ANTHONY S. BUDA, individually, BANYAN MEDICAL SYSTEMS, LLC, a Nebraska limited liability company, BANYAN HOLDCO I, INC., a Nebraska corporation, BANYAN HOLDCO II, INC., a Nebraska corporation, BANYAN MEDICAL SERVICES, INC., a Nebraska corporation, BANYAN MEDICAL SOLUTIONS, LLC, a Nebraska limited liability company, BANYAN CAPITAL I, LLC, a Nebraska limited liability company, BANYAN CAPITAL II, LLC, a Nebraska limited liability company, SYNCONIUM, LLC, a Delaware limited liability company, BANYAN PLACEHOLDER, INC., f/k/a BANYAN MEDICAL SOLUTIONS, INC., a Nebraska Corporation, and BMS AVIATION, LLC, a Delaware Corporation | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 8:26–CV–99 |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 9(b) AND FED. R. CIV. P. 12(b)(6)** |
| RYAN SCOTT, individually, RES VENTURES, SEZC, an entity organized under the laws of the Cayman Islands, OCT VENTURES, LLC, d/b/a/ ELEVATE HOLDINGS, a Nebraska limited liability company, RMR CAPITAL ADVISORS, LLC, a Nebraska limited liability company, QV FUND I, LLC, a Nebraska limited liability company, ELEVATE RECOVERY AND MED SPA, LLC, a Nebraska limited liability company, ELEVATE STRETCH AND CYRO, LLC, a Nebraska limited liability | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

1

company, JIGSAW CAPITAL, LLC, a            )
Nebraska limited liability company,        )
JIGSAW RED HOLDINGS, LLC, a                )
Nebraska limited liability company,        )
JRNR LLC, a Nebraska limited               )
liability company, GREENTOPS, LLC,         )
a Missouri limited liability company,      )
GREENSTONE INVESTMENTS, LLC,               )
a Nebraska limited liability company,      )
INLINE CAPITAL PARTNERS, LLC,              )
a Nebraska limited liability company,      )
SFFS MASTER HOLDINGS, LLC, a               )
Nebraska limited  liability company,       )
MVPA, LLC, a Nebraska  limited             )
liability company, MED VENTURES,           )
LLC, a Nebraska limited liability          )
company, IA NE CONCRETE PULL N             )
POUR LLC, a Nebraska limited               )
liability company, CATALYSTWAVE            )
CAPITAL PARTNERS, LLC, a                    )
Nebraska limited liability company,        )
CATALYST GROWTH PARTNERS,                  )
LLC, a Nebraska limited liability          )
company, PRIMEPATH TRUCKING                )
AND LOGISTICS, LLC, a Nebraska             )
limited liability company,                 )
QUANTUM VENTURES, LLC, a                    )
Nebraska  limited liability company,       )
PRIVADO, LLC, a Nebraska limited           )
liability company, ALPINE DRONES           )
MEDIA, LLC, an Idaho limited               )
liability company,                         )
                                           )
and,                                       )
PRESENTLY UNKNOWN                          )
JANE/JOHN DOES 1-25                        )
                                           )
           Defendants.                     )
                                           )
                                           )

2

## I.   INTRODUCTION

In their own words, Plaintiffs expressly acknowledge that "the posture of this Civil RICO claim [is] unusual and uncommon." (Filing No. 49 at 14). That much is true. But apart from this concession, Defendant Ryan Scott ("Scott") cannot agree with much else. For the reasons set forth in this Reply Brief, as well as the arguments he raised in his initial submission, Scott respectfully requests that this Honorable Court dismiss the "unusual and uncommon" RICO suit Plaintiffs admit they have brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Scott further requests that leave to amend be denied because (1) any amendment would be futile in light of Plaintiffs' own admissions, and (2) Plaintiffs have failed to follow this Court's local rules in requesting leave to amend. *See* NECivR. 15.1(a).

## II.   BACKGROUND

In light of what Plaintiffs state in their opposition filing, some overarching clarifications and comments are appropriate at this juncture before Scott replies to the specific arguments that Plaintiffs make. First, and consistent with the tact Plaintiffs took in their Complaint, not a single defendant (or anyone else alleged to be a part of a supposed RICO enterprise) other than Scott is specifically mentioned in Plaintiffs' Opposition Filing. *See generally* Filing No. 49.   Plaintiffs' Brief—like their Complaint—instead refers to Scott individually and all 22 other Defendants collectively. Apart from Scott, Plaintiffs never explain how any other particular Defendant has anything to do with the subject matter of this litigation. Without such factual assertions, Plaintiffs cannot plausibly plead a cognizable RICO enterprise.

3

Second, Plaintiffs' Opposition Brief makes a number of assertions that it asks this Court to accept as true, but are *nowhere* pleaded within their Complaint. One notable example is as follows: "Accepting all allegations in the Complaint as true, Scott has some ownership or membership interest in the Nonmoving Parties." (Filing No. 49 at 11). Plaintiffs have never actually pleaded this, and it is unclear where in their Complaint they believe they did. While their Opposition Brief cites to paragraph 81 in support of this assertion, when one reads paragraph 81 of the Complaint, it does not actually say this.

Plaintiffs' Opposition Brief also cites to "publicly available records" and claims that "Scott is identified as the registered agent for ten of the twenty-two Nominal Defendants." Scott does not dispute that (when properly supported and put before it, of course) a court may "take notice of public records in its review of the Complaint." *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007). But Plaintiffs neither cite nor attach these "publicly available records" for the Court's consideration. Indeed, they do not even describe what "publicly available records" they are referring to. Yet, even if this Court were inclined to accept Plaintiffs' unpled *ipse dixit*, that does not clear up the confusion because Plaintiffs do not specify which "ten of the twenty-two" defendants they are claiming fit this profile.[1] It is problematic enough that Plaintiffs do not plead this content in their Complaint, but they still do not explain it in their Opposition Brief. And *even if they did*, it is still altogether unclear how Plaintiffs believe that simply being a registered agent for an entity or having some ownership or

---

[1] None of whom, by the way, have been served. And Plaintiffs offer no timeline for when they intend to try and do so. *See* Filing No. 49 at 3 and 19.

4

membership interest in a company gives rise to a RICO enterprise. The short answer is: it doesn't. *See Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) ("[A] growing number of courts, including our own, have held that an attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services."); *Nolte v. Pearson*, 994 F.3d 1311, 1317 (8th Cir. 1993) ("[O]ne must participate in the *operation or management* of the *enterprise itself* to be subject to liability under section 1962(c).") (emphasis added); *cf. Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself.").

Third, these are not the only unpled factual assertions that show up in Plaintiffs' Opposition Brief but are absent from their Complaint. Other examples include the following:

a. **Page 9 of Plaintiffs' Opposition Brief**: "Scott used the Nonmoving Defendants to facilitate the commission of his fraud by diverting funds due and owing to Banyan to his bank accounts." (Filing No. 49 at 9). Plaintiffs cite Paragraphs 66 and 81 of their Complaint in support of this assertion, but the only mention of a bank account in either of these paragraphs is the following: "The account was instead maintained at Westside State Bank, where *Scott* has established multiple bank accounts in Banyan's name." (Filing No. 1 at ¶66) (emphasis added). There is no mention of the "Nonmoving Defendants" being used to facilitate this transfer to Scott's bank accounts.

b. **Page 11 of Plaintiffs' Opposition Brief:** "Scott's entities are legal entities engaged in various business activities separate from the racketeering activities." (Filing No. 49 at 11). It is again unclear what "legal entities" Plaintiffs are even referring to here, but at no point in their Complaint do Plaintiffs allege what "various business activities" these "legal entities" are engaged in.

5

With these general matters having been noted, Scott will now reply to the specific arguments that Plaintiffs raise in their Opposition Brief and explain why they fail to move the needle in favor of allowing this "unusual and uncommon" RICO suit to persist.

### III.    REPLY ARGUMENTS

### A.  Plaintiffs Fail to Plausibly Plead the Existence of an Enterprise

As Scott noted in his initial submission, a RICO enterprise requires three things: "(1) a common purpose that animates the individuals associated with it; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable structure distinct from the conduct of a pattern of racketeering." (Filing No. 15 at 7) (quoting *United States v. Lee*, 374 F.3d 637, 645 (8th Cir. 2004)). Plaintiffs have not pleaded factual content in their Complaint sufficient to plausibly establish any one of these three requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "a complaint does not suffice if it tenders 'naked assertions' devoid of further factual enhancement") (cleaned up).

With respect to the first requirement—common purpose—Plaintiffs state: "the common purpose of Defendants was 'diverting funds from Banyan through undisclosed and unauthorized transfers to Scott and his business entities during Scott's tenure at Banyan." (Filing No. 49 at 8) (emphasis in original omitted). No matter how many times they may parrot this same refrain, it remains the same—a threadbare assertion devoid of any factual allegations to plausibly support this conclusory claim. Plaintiffs say much about *Scott*—that is true—but they allege

*nothing* of any substance about any other particular Defendant. And they certainly do not adequately plead facts upon which this Court could plausibly conclude there was a common purpose between Scott and anyone else. It is difficult to see how Plaintiffs can be said to have plausibly pleaded a "common purpose" shared between Scott and 22 other Defendants when Plaintiffs only mention these 22 other defendants in jurisdictional recitals and threadbare legal conclusions lacking in any true factual content. *See* Filing No. 15 at 4–5 (setting forth a chart showing how many times and in what paragraph each individual Defendant is named in the Complaint).

But the lack of a common purpose is not the only thing Plaintiffs have failed to sufficiently plead. With respect to the second requirement—an ongoing organization with members that function as a continuing unit—Plaintiffs' Complaint fares no better. The Complaint simply fails to set forth any factual content regarding these 22 other Defendants such that this Court could plausibly conclude they, along with Scott, were part of an ongoing organization that functioned as a continuing unit. Indeed, Plaintiffs' Complaint does not include even a *threadbare* assertion that this was the case, much less factual content that would plausibly support such a conclusion. Nor does their Opposition Brief really even address this separate requirement. *See* Filing No. 49 at 8–10 (discussing the first and third requirements of a RICO enterprise, but largely skipping over the separate requirement to set forth an ongoing organization with members that function as a continuing unit).[2]

---

[2] To be sure, though, Plaintiffs do acknowledge that the law requires this elsewhere in their brief. *See* Filing No. 49 at 7.

7

With respect to the third requirement for a RICO enterprise—an ascertainable structure distinct from the conduct of a pattern of racketeering—Plaintiffs likewise fail to plead factual content sufficient to plausibly support the existence of any such ascertainable and distinct structure. As Scott noted in his initial submission, "an enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts." (Filing No. 15 at 9) (quoting *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815 (8th Cir. 1992)). "If the only common factor that links a group together and defines them as a distinct group is their direct or indirect participation in the very predicate acts that are being alleged as part of the RICO claim, then there is no enterprise." (Filing No. 15 at 9) (citing *Stephens, Inc.* at 815–16).

Plaintiffs assert that "[p]utting aside all of the fraudulent actions by Scott and the unauthorized and undisclosed transactions facilitated by Scott and the Nonmoving Defendants, the association among Scott and the Nonmoving Defendants still exists" because when the allegations in the Complaint are accepted as true, "Scott has some ownership or membership interest in the Nonmoving Parties." (Filing No. 49 at 11). They therefore posit that because "Scott's entities are legal entities engaged in various business activities separate from racketeering activities . . . [they] have sufficiently alleged an ascertainable structure distinct from the conduct of a pattern of racketeering." (Filing No. 49 at 11). This is the *sole* argument Plaintiffs make in favor of the existence of an ascertainable/distinct structure and it is fundamentally flawed for a host of reasons.

8

First, and as mentioned previously, the Complaint contains no factual allegations regarding Scott having any ownership or membership interest in any particular "Nonmoving Party." *See generally* Filing No. 1. That assertion has never been pleaded. Second, the Complaint also contains no factual allegations regarding the "various business activities separate from the racketeering activities" that Plaintiffs contend the Nonmoving Defendants were involved in. In fact, the *only* activities the Plaintiffs accuse the Nonmoving Defendants of being involved in *are* racketeering activities (as conclusory and threadbare as those assertions might be). Third, Plaintiffs misunderstand the rubric that applies in assessing ascertainable distinctiveness. Setting aside for a moment the lack of any factual content to support this broad assertion, they state that there is an ascertainably distinct structure because "Scott's entities are legal entities engaged in various business activities separate from the racketeering activities." Filing No. 49 at 11.

Courts have rejected this precise argument before. In *Rosemann v. Sigillito*, for example, Judge Reade considered a like argument and explained that legitimate activities carried on by a person or entity "*individually* are not sufficient to show a structure beyond that inherent in the pattern of racketeering activity[.]" *Rosemann v. Sigillito*, 956 F. Supp. 2d 1082, 1096 (E.D. Mo. 2013) (emphasis in original) (citing *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815–16 (8th Cir. 1992)). In finding that the complaint "fail[ed] to point to any activity of the alleged enterprise that is distinct from the racketeering activity at issue[,]" Judge Reade concluded that the plaintiffs had "not shown that the alleged association-in-fact . . . has any structure

9

distinct from the alleged racketeering activities and, accordingly, have failed to show the existence of a RICO enterprise." *Id.* at 1096. The case at bar is no different.

Finally, and in what is perhaps most telling of all, Plaintiffs say the quiet part out loud by not once but *twice* referring to the other named defendants in this case as "nominal defendants." *See* Filing No. 49 at 11 n.1. A nominal defendant is generally understood to mean someone who is *not* accused of wrongdoing and who is only included in an action because the law requires their presence for the case to proceed properly. *See SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) ("A nominal defendant is not a real party in interest, however, because he has no interest in the subject matter litigated. His relation to the suit is merely incidental and 'it is of no moment [to him] whether the one or the other side in [the] controversy succeeds.'") (quoting *Bacon v. Rives*, 106 U.S. 99, 104 (1882)). Or, as the Eighth Circuit puts it, nominal defendants are "those 'against whom no real relief is sought[.]'" *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002) (quoting *Pecherski v. General Motors Corp.*, 636 F.2d 1156, 1161 (8th Cir. 1981)). The Eighth Circuit has even gone so far as to use the words "nominal" and "unnecessary" interchangeably in this context. *See Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 543-44 (8th Cir. 2015). That would explain why Plaintiffs have not served these other Defendants, and apparently have no anticipated timeline for when they will to try to do so. *See* Filing No. 49 at 3, 19. But more importantly for present purposes, the fact that Plaintiffs admit everyone else *other than Scott* is nothing more than a "nominal defendant" underscores precisely why Plaintiffs cannot plead the existence of a RICO enterprise.

10

### B. Plaintiffs Have Not Adequately Pleaded Facts Plausibly Establishing Scott's Association with a RICO Enterprise

Plaintiffs' failure to plausibly plead a cognizable RICO enterprise in and of itself dooms their claims. But Plaintiffs are *separately* required to plead factual content plausibly establishing that *Scott* was associated with a RICO enterprise. So even if the Court were to assume *arguendo* that Plaintiffs have pleaded the existence of "a" RICO enterprise, that doesn't satisfy their separate obligation to plead that Scott was associated with this enterprise. They have not done this either.

At no point in their Complaint did Plaintiffs ever allege that any of the other Defendants were Scott's "business entities"—whatever that term is meant to encompass—but Plaintiffs try to clean up this pleading failure by submitting that "[i]t would be illogical to assume that the Nonmoving Defendants in this lawsuit are not Scott's business entities based on the context of the Complaint." (Filing No. 49 at 12). There are a plethora of problems with this un-pled "assumption." Perhaps the best illustration of this is the fact that *Plaintiffs* pled one *of their own* as *both* a plaintiff *and a defendant* when they first filed their Complaint—something that was only corrected after Scott noted it in a filing and this Court intervened. *See* Filing No. 15 at 5 n.2; Filing No. 29; Filing No. 30. Given Plaintiffs' demonstrated penchant for suing themselves in this very case based upon their own confusion as to who is who, Scott respectfully submits that this Court should reject Plaintiffs' unpled "assumptions" about Scott's relationships with these 22 other named defendants. And while Plaintiffs did move to dismiss Banyan Capital I as a defendant in this action, to this day their Complaint still alleges that Banyan Capital I was part of the RICO

11

enterprise. *See* Filing No. 1 at ¶81. Whether Banyan Capital I is a defendant in this action or not, the point remains that Plaintiffs' Complaint *still* says that *one of the plaintiffs* was part of the RICO enterprise. This pleading impossibility is emblematic of their RICO claims writ large.[3]

Moreover, the most grammatical reading of Plaintiffs' Complaint would actually support the conclusion that the 22 other named defendants are *not* Scott's "business entities." Paragraph 81 of the Complaint alleges that "Defendants associated for the common purpose of diverting funds from Banyan through undisclosed and unauthorized transfers to Scott and his business entities during Scott's tenure at Banyan." (Filing No. 1 at 27). Thus, "business entities" are described as something *distinct* from the Defendants. With the exception of Scott, Plaintiffs do not allege that Defendants diverted funds from Banyan to *themselves*; Plaintiffs allege that Defendants diverted funds to "Scott and his business entities[.]" Defendants are the subject of this sentence and "business entities" are the prepositional object, thereby denoting a difference between the two.

In any event, even if this Court were to accept these grammatically problematic assumptions, that still does not change the fact that Plaintiffs must plead factual content from which one could plausibly conclude that not only did a RICO enterprise exist, but that Scott was associated with that enterprise. They have not done so. Plaintiffs' Opposition Brief repeatedly refers to Scott's purported fraudulent activity

---

[3] And that is even before considering the fact that, according to Plaintiffs' own corporate disclosure statement they filed on May 15, 2026, both Anthony Buda (a named individual Plaintiff) and Scott (a named individual Defendant) are listed as the sole members of corporate Plaintiff Banyan Capital I. *See* Filing No. 44 at 3.

and points over and again to his supposed confessions of wrongdoing. Fair enough. But—and this bears repeating—"RICO does not cover all instances of wrongdoing." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). Just because a RICO claim is unavailable to Plaintiffs in federal court, this does not stop them from pursuing any and all fraud-related claims they may have against Scott in state court. Plaintiffs know this, of course, because prior to bringing this RICO suit at least one of them brought a host of fraud-related claims against Scott in state court. *See* Filing No. 33-4; Filing No. 34 at 4. That is where such claims belong—not here under the guise of RICO. *See Rolfes v. MBNA Am. Bank N.A.*, 416 F. Supp. 2d 745, 753 (D.S.D. 2005) ("It is important to note that the Eighth Circuit has rejected attempts to convert ordinary civil disputes into RICO cases"). In sum, Plaintiffs have not plausibly pleaded the existence of a RICO enterprise, let alone Scott's affiliation with one.[4]

### C. Plaintiffs Fail to Adequately Plead Predicate Acts

Plaintiffs have also separately failed to adequately plead the necessary predicate acts to go forward on their RICO claims. Scott will be brief and largely rest on the arguments he raised in his initial submission, but takes this opportunity to rebut Plaintiffs' claim that saying "Scott and his business entities" is sufficient to clearly answer "who" committed the predicate acts from a Rule 9(b) perspective. Which "business entity" or "entities" Plaintiffs are referring to here is anyone's guess.

---

[4] Scott would further note that Plaintiffs have flip-flopped on various occasions in their description of the nature of this case. On May 8, 2026, Plaintiffs cited to the "complexity of this case" in one of their motions. (Filing No. 37 at 3). When Plaintiffs filed their Brief in Opposition to Scott's Motion to Dismiss three days later, however, they opened with the following salvo: "This case is straightforward." Then, 13 pages later within this same filing, Plaintiffs described the posture of their RICO claims as "unusual and uncommon."

13

Is it all of them? Is it 10 of the 22 they mentioned earlier? And, if so, which 10 are those? Questions abound. *See Crest Const. II, Inc.*, 660 F.3d at 356 (faulting a RICO complaint for "suggest[ing] that at indefinite times, in nondescript ways, and for unidentified purposes, some, but not all [d]efendants" engaged in a fraudulent scheme); *cf. Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428–29 (8th Cir. 2009) (concluding that the "district court correctly dismissed the claim for lack of particularity" where the plaintiff's "amended complaint allege[d] in very general terms that Amway engaged in racketeering that 'involved the use of the interstate telephone and the U.S. mails on a number occasions'").

### D. Plaintiffs Fail to Plead a Pattern of Racketeering Activity

With respect to the fourth and final component of their substantive RICO claim, Scott will again rely upon the arguments he made in his initial submission. As noted in that brief, the Eighth Circuit has expressed agreement with the following proposition: "If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim. If we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 685 (4th Cir. 1989) (cited with approval by the Eighth Circuit in *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991)). Scott respectfully submits that if this case is anything, it involves allegations of garden-variety fraud against him personally—not a RICO claim.

14

### E.  Plaintiffs' RICO Conspiracy Claim Should Fail for the Reasons Scott Previously Noted in his Opening Brief

Scott will again rest on the arguments he raised in his Opening Brief regarding why Plaintiffs' RICO conspiracy claim must fail along with their substantive RICO claim. *See* Filing No. 15 at 13–14. However, he would note that Plaintiffs' sole argument they raise in their filing is that they did, in fact, allege that "Defendants intended to or agreed to further an endeavor of Scott which, if completed would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. 1962(c)), and adopted the goal of furthering or facilitating the criminal endeavor." (Filing No. 49 at 17) (emphasis omitted). This is nothing more than the type of threadbare, conclusory assertion devoid of any real factual content that Courts have routinely rejected— particularly within the RICO context. *See Crest Const. II, Inc.*, 660 F.3d at 357 ("When facing a motion to dismiss, threadbare recitations of the elements of a RICO claim, 'supported by mere conclusory statements, do not suffice'") (quoting *Iqbal*, 556 U.S. at 678).

### F.  Leave to Amend Should Be Denied

Having explained why Plaintiffs' Complaint fails to plausibly plead RICO claims against Scott, this Court should also deny Plaintiffs' alternative request for leave to amend. This is so for two different reasons. First, Plaintiffs have failed to follow this Court's local rules in requesting leave to amend. *See* NECivR. 15.1(a) (requiring a party that moves for leave to amend their pleadings to "file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments" and further requiring that any such

15

"motion for leave to amend must (1) specifically state the proposed amendments and (2) state whether the motion is unopposed or opposed, after conferring with opposing parties."). Plaintiffs have done none of these things and leave to amend should therefore be denied for failure to comply with this Court's local rules. *See generally First Interstate Bank v. Ives, No.* 8:25–CV–597*,* 2026 LX 184737, at \*30-32 (D. Neb. Mar. 26, 2026) (citing *Clobes v. 3M Co.*, 106 F.4th 803 (8th Cir. 2024)). Second, and more fundamentally, any such amendment would be futile anyway in light of Plaintiffs' insistence that all other Defendants in this case are nothing more than nominal parties that have no real stake in this case and who had no separate and distinct association apart from the predicate acts of racketeering that have been alleged. *See Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018) (stating that futility is a valid basis for denying leave to amend).

## IV.   CONCLUSION

This case is many things—but RICO in not one of them. Plaintiffs do an able enough job of alleging plain and ordinary misconduct against Scott in his individual capacity. But RICO requires more. Plaintiffs remain free to bring such claims against him in state court where they belong. They know this, of course, because they *already did so* months before they filed this RICO suit. (Filing No. 33-4). Federal appellate courts have long warned against permitting garden-variety fraud claims that belong in state court to proceed as RICO claims.[5] The Eighth Circuit is no exception. *See*

---

[5] *See e.g., Al-Abood v. Elshamari*, 217 F.3d 225, 238 (4th Cir. 2000) ("[W]e are cautious about basing a RICO claim on predicate acts of mail and wife fraud because it will be the unusual fraud that does not enlist the mails and wires in its services at least twice. This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state

16

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.,* 528 F.3d 1001, 1029 (8th Cir. 2008) (We have in the past rejected attempts to convert ordinary civil disputes into RICO cases . . . Although Plaintiffs have presented evidence sufficient to establish violations of state law, they have not presented sufficient evidence to satisfy the more onerous requirements of RICO"); *see also SBFO Operator No. 3, LLC v. Onex Corp.,* 663 F. Supp. 3d 990, 1012–13 (E.D. Mo. 2023) ("The Eighth Circuit rejects attempts to convert ordinary civil disputes into RICO cases, as the RICO Act was not intended to apply to claims of ordinary commercial fraud.") For the reasons set forth above, Scott respectfully requests that this Court do likewise and conclude that Plaintiffs' garden-variety claims of wrongdoing against him individually fail to plausibly allege either a substantive RICO claim or a RICO conspiracy claim and dismiss this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated this 18th day of May, 2026.

Ryan Scott,
Defendant

 /s/ Ryan S. Crnkovich
Ryan S. Crnkovich, NE Bar #25741
Dornan, Howard, Breitkreutz,
Dahlquist & Klein PC, LLO
1403 Farnam Street, Suite 232
Omaha, Nebraska 68102
(402) 884-7044 (phone)
(402) 884-7045 (fax)
Attorney for Defendant

---

law and cases involving a more serious scope of activity.") (internal quotations and citations omitted); *Bachman*, 178 F.3d at 932 ("If Snyder, Ferrell, and Company are a RICO organization, then every conspiracy to commit fraud is a RICO organization and consequently ever fraud that requires more than one person to commit is a RICO violation. That is not the law.").

17

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(4), I hereby affirm that the foregoing brief complies with the requirements of NECivR 7.1(d)(4) because it consists of 4,862 words.

*/s/ Ryan S. Crnkovich*
Ryan S. Crnkovich

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I caused the foregoing document to be filed with the Clerk of the District Court and all counsel of record using the CM/ECF system.

*/s/ Ryan S. Crnkovich*
Ryan S. Crnkovich